SILLS CUMMIS & GROSS P.C.
Valerie A. Hamilton, Esq.
vhamilton@sillscummis.com
George R. Hirsch, Esq.
ghirsch@sillscummis.com
600 College Road East
Princeton, New Jersey 08540
Tel.: (609) 227-4600
Fax: (609) 227-4646
*Proposed Attorneys for the Debtors and Debtors-In-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Hon. Michael B. Kaplan |
| PRINCETON ALTERNATIVE INCOME FUND, LP et al., | Lead Case No. 18-14603 (MBK) (Jointly Administered) |
| Debtors-In-Possession. | Chapter 11 |

**DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO RANGER'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C. § 362 TO PERMIT THE COMPLETION OF PHASE I OF THE PENDING ARBITRATION PROCEEDINGS AGAINST THE DEBTORS**

Princeton Alternative Income Fund, LP ("PAIF") and Princeton Alternative Funding, LLC ("PAF," together with PAIF, the "Debtors"), by and through their proposed counsel, Sills Cummis & Gross, P.C., hereby objects to the motion (the "Motion") by Ranger Specialty Income Fund, LP, Ranger Alternative Management II, L.P., and Ranger Direct Lending Fund Trust (collectively, "Ranger") for relief from the automatic stay of 11 U.S.C. § 362 to permit the completion of Phase I of the pending arbitration proceedings against the Debtors, and respectfully states as follows:

5343755 v2

**PRELIMINARY STATEMENT**

Although arbitration is a favored means for resolving disputes, the relief sought by Ranger in its Statement of Claims clearly shows that core bankruptcy issues are at stake and permitting arbitration to proceed against the Debtors at this juncture would interfere with the Debtors' reorganization efforts. When conflicts arise between an arbitration clause and fundamental bankruptcy policies (including affording debtors the breathing room necessary to attempt a fresh start, equality of distribution of assets among similarly situated creditors, and centralizing disputes in a single forum), arbitration must yield. Accordingly, Ranger's motion for stay relief to continue the arbitration as to the Debtors should be denied.

**LEGAL ARGUMENT**

**Ranger's Request for Stay Relief to Complete Phase I of the Arbitration Should Be Denied Because the Relief Sought Strikes at the Heart of Core Bankruptcy Court Jurisdiction.**

1. Ranger seeks relief from the automatic stay to continue "Phase 1" of the JAMS arbitration. Although the claims in the arbitration are based upon state law principles, the gravamen of Ranger's claims, and the relief sought, is focused on Ranger's redemption of its limited partnership interests in PAIF and Ranger's desire to obtain financial information relating to PAIF.

2. Enforcement of a right of redemption would implicate the liquidation of PAIF's assets, which falls squarely within the bankruptcy court's province. The second form of relief requested by Ranger, obtaining control over the Debtors' books and records, is another matter within the purview of the bankruptcy court.

3. Ranger describes the relief it seeks in Phase I of the Arbitration in paragraph 8 of Claimants' Amended And Consolidated Statement Of Claims ("Statement Of Claims"):

2

    8. Ranger seeks an arbitration judgment enforcing its right to redemption, its right to information about its investments and the Princeton Funds, enjoining further violations of contractual and fiduciary duties and awarding damages.

  4. The Prayer for Relief in the Statement Of Claims is more granular regarding the injunctive relief Ranger seeks from the JAMS Panel; it includes, among other things, injunctions precluding the Debtors from conducting the ordinary course of their business with their existing credit lines and requiring the Debtors to distribute to Ranger (in derogation of the rights of all creditors and other investors) "all free cash flow." Ranger also seeks a receiver "to oversee the redemption of Ranger's investment."[1] These types of acts to obtain property of the estate or to obtain property from the estate or to obtain control over property of the bankruptcy estate are at the heart of the automatic stay. See, 11 U.S.C. §362(a)(3).[2]

  5. Ranger's bold statement in paragraph 3 of its Motion that "[t]he resolution of the disputes addressed in the Arbitration must be resolved before Debtors can undertake any substantive use of the bankruptcy process" is without merit, and is without any citation to factual or legal authority.

  6. Nor would stay of the arbitration post a risk of re-litigation, as Ranger contends. There is no dispute that Ranger holds an established amount of limited partnership interests in PAIF and seeks to redeem them.

  7. The issue in this case – and it is an issue for the bankruptcy court – is how and over what period of time will the Debtors' assets be monetized. Ranger will be redeemed through that process, after creditor claims are addressed pursuant to the priority scheme of the Bankruptcy Code, and *pro rata* with other limited partnership interests.

---

[1] These are core issues. 28 U.S.C. §157(b)(2)(A), (B), (M), (N) and (O).

[2] The interim relief Ranger sought immediately before the filing of the Debtors' Petitions was an Order requiring PAIF to take any proceeds from Credit Line 11 and segregate them from the rest of the Fund.

8. The timing and structure of the Debtors' reorganization falls within the core jurisdiction of this Court, and will not require the input of the JAMS Panel. Indeed, permitting these questions to be addressed in the arbitration would be an improper abdication by this Court of its responsibilities, favoring Ranger to the detriment of the other constituents of this bankruptcy estate.

9. Furthermore, continuing the arbitration will impose costs on the estate, and will be a distraction from the Debtors' reorganization efforts. As the court noted in In re W.R. Grace & Co., 2007 Bankr. D. Del. 1214 at *9, fn. 7 (April 13, 2007), the effect on the administration of the estate of litigation in another forum is the most important factor in determining whether to grant stay relief. "Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." Id. quoting In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984).

10. Ranger relies on a three-pronged test for relief from the stay. Ranger also ignores other factors courts consider, but, even so, Ranger fails its own three-pronged test.

11. First, as explained above, there is significant prejudice to the bankruptcy estate from the continuation of the arbitration.

12. Second, there is no hardship to Ranger if the stay is continued, and that lack of hardship is clearly outweighed by the hardship to the Debtors and the impact on the reorganization process. Ranger's only argument on hardship is that it already spent a lot of money litigating. While this may be true, the information Ranger obtained through discovery in the arbitration has not evaporated and the discovery need not be repeated. Ranger's contention that there will be re-litigation is unexplained, and, under the circumstances of this case, inexplicable.

13. Third, Ranger simply presumes that it will prevail in the arbitration, i.e., that it will be entitled to redeem. That presumption misses the point, as the fact that Ranger will be redeemed is not an issue. Ranger should not be permitted to use the arbitration to gain advantage over the creditors and other limited partners by acquiring control over the Debtors' assets, operations and books and records. Yet that is precisely what Ranger seeks.

14. Ranger also ignores the many other factors considered by the courts in exercising discretion with regard to relief from the automatic stay, which include: (i) the connection of the other litigation with the bankruptcy case and interference with the bankruptcy case. Here, the issues in the arbitration go to the heart of the bankruptcy process; (ii) whether the other litigation requires a specialized tribunal. Here the very nature of the issues makes the bankruptcy court best suited to address them; (iii) whether the other litigation would prejudice the interests of other creditors. Here that is clearly the case; and (iv) whether a judgment claim from the other action would be subject to equitable subordination. Here, were Ranger to be a creditor, as opposed to a limited partner, its claim would be subordinated under Section 510(b) of the Bankruptcy Code. See W.R. Grace & Co., at *8, fn. 6 citing, In re Mid-Atlantic Handling Systems, LLC, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).

15. A bankruptcy court has discretion to decline to defer to arbitration regardless of whether the issue presented is core or non-core. Mintze v. Amer. Fin. Services, Inc., (In re Mintze), 434 F.3d 222 at 229 (3d Cir. 2006). The mandate of the Federal Arbitration Act, 9 U.S.C. §1-14 (the "FAA") "can be overridden where the party opposing arbitration can demonstrate that 'Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.'" Id., quoting Shearson/Am. Exp. Inc. v. McMahon, 482 U.S. 220 at 227 (1987).

5343755 v2

16. In this case, the relief sought by Ranger in the arbitration, unlike the situation in Mintze, would have "a sufficiently adverse effect on the underlying purposes of the Bankruptcy Code," i.e., facilitating reorganization of debts and assets, affording debtors the breathing room necessary to make a fresh start, allowing repayment of creditors in accordance with the priority provisions of the Bankruptcy Code, and centralization of disputes in a single forum.  Allowing Ranger to proceed with arbitration would necessarily jeopardize these Bankruptcy Code objectives.  Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006) ("The estate created by section 541 is protected from the piecemeal reach of creditors by section 362, which imposes an automatic stay on all actions and proceedings that may affect the debtor's property.  It is [Section 541's] central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code: the breathing room necessary given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors…"); Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC), 475 B.R. 9, 49 (S.D.N.Y. 2012) (affirming bankruptcy court's determination that bankruptcy policies of facilitating reorganization, allowing repayment of creditors and centralizing disputes in a single forum outweighed movant's interest in enforcing freely negotiated arbitration clause and protecting itself from application of foreign, unfamiliar laws); Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.), 390 B.R. 784, 793-95 (Bankr. S.D.N.Y. 2008) (exercising discretion to deny arbitration because of "severe conflict" with bankruptcy policy).

17. The case at bar is not like the situation in MicroBilt Corp. v. Fid. Nat'l Info. Servs. (In re MicroBilt), 484 B.R. 56 (Bankr. D.N.J. 2012).  In that case, the debtors brought an adversary proceeding seeking damages for tortious interference and violations of the automatic stay.  In contrast to the JAMS arbitration which Ranger seeks to continue, the proposed

6

arbitration in MicroBilt did not involve possession or control over the debtors' assets, did not favor one estate constituent, and did not "impede the administration of the bankruptcy estate." Id. 484 B.R. at 65. Here all of those factors are present, making relief from stay to allow Ranger to continue the arbitration inappropriate.

## CONCLUSION

For the foregoing reasons, Ranger's motions for relief from the automatic stay to proceed against the Debtors in Phase I of the arbitration should be denied and this Court should grant such other and further relief as is just and proper.

Dated: April 18, 2018

**SILLS CUMMIS & GROSS P.C.**
*Proposed Counsel for Debtors and Debtors in Possession*

By: */s/ Valerie A. Hamilton*
    Valerie A. Hamilton
    George R. Hirsch

One Riverfront Plaza
Newark, NJ 07102
Tel: (973) 643-7000
Fax: (973) 643-6500
E-mail: vhamilton@sillscummis.com
        ghirsch@sillscummis.com

5343755 v2