BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership
By:   Dean C. Waldt, Esq.
      David A. Haworth, Esq.
      David J. Margules, Esq.*
      Timothy D. Katsiff, Esq.*
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
Telephone: (856) 761-3400
Facsimile: (856) 761-1020
*Admitted *Pro Hac Vice*
Attorneys for Ranger Specialty Income Fund, L.P.,
Ranger Alternative Management, II, L.P., and
Ranger Direct Lending Fund Trust

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Princeton Alternative Income Fund, LP, et al.,<br><br>Debtors-In-Possession. | Hon. Michael B. Kaplan<br><br>Lead Case No. 18-14603 (MBK)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Hearing Date: May 14, 2018 at 1:00 p.m. |

**LIMITED OBJECTION TO APPLICATION FOR RETENTION OF PROFESSIONAL BERNARD A. KATZ**

Ranger Specialty Income Fund, LP ("Ranger Domestic"), Ranger Alternative Management II, LP ("Ranger Management"), and Ranger Direct Lending Fund Trust ("Ranger Offshore and collectively with Ranger Domestic and Ranger Management, "Ranger") hereby object to the Application for Retention of Professional Bernard A. Katz (the "Application")(Dkt. No. 88) filed by Debtors Princeton Alternative Income Fund, LP ("PAIF" or "Debtor"), and in support thereof states as follows:

1

DMWEST #17688979 V6

## I.  BACKGROUND

1. PAIF has filed the Application seeking authorization from the Bankruptcy Court to retain Bernard A. Katz ("Katz") as a member of PAIF's "Advisory Board".

2. According to the submissions made by PAIF to the Bankruptcy Court, PAIF is purportedly controlled and managed by a substitute General Partner ("GP"), Princeton Alternative Funding Management, LLC ("PAFM").  PAIF has represented to the Bankruptcy Court and the parties that the majority equity holder and controlling entity of PAFM is MicroBilt Financial Services, Corp. ("MicroBilt").[1]

3. Pursuant to Section 3.01(q) of the Limited Partnership Agreement (the "LPA")[2], the GP of PAIF may establish, from time to time, an advisory committee and delegate to such advisory committee the performance of such certain functions[3] and to receive from it guidance, as determined by the GP. While Section 3.01(n) of the LPA allows the expenses of the GP and of PAIF to be paid "in accordance with the terms of this Agreement", no provision of the LPA allows the GP to compensate the member(s) of the advisory committee for their services.

---

[1] The control of PAIF by an entity directly owned and controlled by MicroBilt is in direct contravention of PAIF's Private Placement Memorandum ("PPM")(attached to Ranger CSOF at Exhibit M), upon which Ranger relied in making its direct and indirect investments in PAIF. The PPM specifically represents that decision-making authority for PAIF will be held by non-MicroBilt managers. While Ranger asserts that this representation was false from its inception, the purported designation of PAFM as the actual GP of PAIF in the context of this chapter 11 case removes even the veneer of honesty from this representation. *See, Ranger's Common Statement of Facts*, ("Ranger CSOF"), Para 13-16, (Dkt. No.39).

[2] Attached to Ranger CSOF at Exhibit O.

[3] To the extent PAIF, as a debtor-in-possession, wishes to actually delegate functions of PAIF to Katz, the delegated duties should be specified and such delegation should be on notice and with leave of the court. A professional accepting such delegation becomes a direct fiduciary. *See, In re Mushroom Transportation Company, Inc.*, 366 B.R. 414, 452 (Bankr. E.D.Pa. 2007).

4.  The Application outlines the proposed scope of Katz's retention to include the following:

- "[P]rovide independent guidance through Chapter 11 process [sic]"

- "[A]ssist the Debtor through the Chapter 11 process"

- "[T]o provide an independent oversight function for the critical decisions required in formation and implementation of a plan"

5.  Thus, while the word "independent" is used three times in the Application to describe Katz's proposed duties, a fair reading of the Application reveals that Katz is being proposed as a financial and reorganization consultant to assist PAIF in the bankruptcy process and work toward the formation and implementation of a confirmable Chapter 11 Plan.

6.  Ranger, through its undersigned counsel, is familiar with the expertise and reputation of Katz and does not contest that Katz is qualified to serve as a financial and bankruptcy reorganization consultant to PAIF in its Chapter 11 case. If this is the proposed scope of Katz's retention by PAIF, then Ranger does not object to Katz' retention in that capacity.[4]

7.  However, to the extent PAIF seeks to retain Katz as a compensated member of an advisory committee (which presently has no other members), Ranger objects for the following reasons:

---

[4] Ranger reserves it rights to review and object to the any fee application related to such retention under the ordinary procedures for such matters as fee application are filed by PAIF seeking authorization from the Bankruptcy Court to compensate Katz for processional services rendered to the estate. Ranger also adopts and incorporates by reference the Objection to the Application filed by the United States Trustee.

3

- The LPA does not allow compensation for members of an advisory committee under Section 3.01(q)

- PAFM, as the purported substitute GP of PAIF, has extensive experience in the investment sector in which the PAIF fund is engaged and has made no showing as to why it requires financial advice and assistance at the substantial rates being charged by Katz, the cost of which is ultimately bore by Ranger and other Investors, who are the sole practical economic parties-in-interest in this case.

- If PAFM, as the purported substitute GP of PAIF, requires the services of Katz because of its own inherent conflicts of interests and concerns related insider dealings, then the appropriate remedy for that problem is the appointment of a Chapter 11 Trustee or an Examiner, ordered by the Bankruptcy Court and appointed by the United States Trustee under Sections 1104 and 1106 of the Bankruptcy Code.[5]

8.  Ranger further objects to the proposed role outlined for Katz by PAIF, which exceeds the proper scope of a financial and/or bankruptcy reorganization advisor to the Debtor.

9.  PAIF cannot retain its own "independent" investigator or examiner. While Katz can consult with and advise PAIF on its reorganization plans and is qualified for that task, he

---

[5] The Bankruptcy Court has reserved on Ranger's pending Motion to appoint a Chapter 11 Trustee in the PAIF case. To allow the issues to be before the Court in an orderly procedural manner, Ranger will shortly file a Motion for the appointment of an Examiner under Sections 1104 and 1106 of the Bankruptcy Code. This will allow the Court and the parties to properly brief and argue this issue before the Bankruptcy Court, so that a judicial decision on this issue can be squarely addressed.

4

cannot serve any independent investigatory function as a professional retained by PAIF as debtor-in-possession.[6]

10.   However, while not expressly stated in the four-corners of the Application, this self-appointed "independent" investigatory role appears to be that PAIF has in mind for Katz as an estate professional

11.   In its Memorandum of Law (Dkt. No. 83)[7] in opposition to Ranger's Motion seeking alternative relief in the form of dismissal, abstention or the appointment of a Chapter 11 Trustee (Dkt. No. 35 Redacted Version), PAIF asserts in opposition to Ranger's request for the appointment of a Chapter 11 Trustee that Katz has been commissioned to do the following:

- "[P]erform a complete analysis of the Debtor's business and loan portfolios and provide a written report, with supporting documentation, to the Court within ninety(90) days";

- Katz may retain his own professionals, such as accountants and legal counsel;

- All discovery will be stayed in the case until Katz delivers his report to the Court;

---

[6] Undersigned counsel for Ranger has had one independent conversion with Katz, with the permission of PAIF's counsel. At that time, Katz indicated that his conversations with Ranger and/or its counsel would have to be reported to PAIF and its counsel, since he was being retained by Debtors in this case. That is entirely appropriate for a professional retained as consultant to the Debtor. It is the antithesis of the role of an Examiner.

[7] See PAIF's Memorandum of Law (Dkt. 83) at pp. 17-19.

5

- If Ranger or other Investors want to obtain information during this investigatory period, apparently PAIF proposes that they must do so through Katz;

- Katz's report to the Court will make recommendation about the reorganization of PAIF and the best method to monetize PAIF's assets.

12.     The fact that these proposed details about the role of Katz and the scope of his engagement are contained in an unrelated pleading and are not mentioned or cross-referenced in the Application makes the Application incomplete of its face.

13.     Assuming the proposed details of the Katz engagement can be indirectly disclosed in this manner, what the terms of engagement essentially amount to is a debtor-in-possession appointing its own Examiner in a chapter 11 case, complete with a report to the Bankruptcy Court[8]. Here, however, the proposed "examiner" would not be working for the Court as an independent investigator appointed by the United States Trustee but would be a professional retained by and compensated by the Debtor.[9]  Furthermore, Katz would be doing double-duty, since the role outlined for him in the Application includes both investigating and reporting to the Court and advising PAIF through the formation and implementation of a Chapter 11 plan.  Thus,

---

[8] The Application seeks authorization to retain Katz *nunc pro tunc* as of the filing date of March 9, 2018. This is an implicit acknowledgement that Katz has been employed by PAIF for nearly two months already. Any credible argument that Katz can undo two months of service and transform himself into a neutral fiduciary has been long since lost.

[9] Were the matter of an "independent board member" being addressed outside of a Chapter 11 context, the analysis would be similar. Under Delaware law, where board members are "beholden to" the company's whole owner and CEO, they cannot be said to be "independent." *In re Emerging Communs., Inc. S'holders Litig*., 2004 WL 1305745 *33 (Del. Ch. May 3, 2004). ("Directors who 'through personal or other relationships are beholden to the controlling person lack independence from that person.") "Highly paid consultant[s]," certain people on retainers, and those who receive annual directors' fees or fees for serving on Special Committees are considered economically beholden. *Id.*

6

the Katz "investigation" is geared to producing a Katz-recommended plan to aid PAIF in its reorganization efforts. The inherent conflict between these two roles is manifest.

14. Section 1104 of the Bankruptcy Code expressly provides that it is the Bankruptcy Court, after notice and hearing, that must order the appointment an Examiner. Once that order is entered, the United States Trustee identifies and appoints the person to fulfill that role, as ordered by the Court.

15. As noted by the Third Circuit in *Official Committee of Unsecured Creditors of Cybergenics v Chinery*, 330 F.3d 548,578 (3d Cir. 2003), the "broad grant" of the role of an Examiner in a chapter 11 case "is most naturally interpreted to authorize acts only related directly to investigation". The Third Circuit explained, based on the legislative history of Section 1106, that "the investigation of the examiner is to proceed on an independent basis from the procedure of the reorganization under chapter 11 in order to ensure that the examiner's report will be expeditious and fair". *Id.* The combined role of investigator and plan advisor requested by PAIF for Katz is exactly what the court in *Cybergenics* rejected.[10]

16. Furthermore, as opposed to the delegation of authority referenced in Section 3.01(g) of the LPA to an advisory committee member, the delegation of any authority to act for

---

[10] Other provisions in the Bankruptcy Code confirm the limited and unique investigatory and reporting role of an Examiner. Section 321(b) of the Bankruptcy Code prohibits a person who has served as an Examiner from later serving as a Trustee in the same case. If this were permitted, parties would be reluctant to provide information to an Examiner during an investigation when the Examiner may later become a representative of the estate. Likewise, Section 327(f) of the Bankruptcy Code prohibits a Trustee from employing a professional who has previously served as an Examiner in a case. The reasons for this are the same. Yet here, PAIF proposes that Katz should serve simultaneously as an estate professional and a neutral investigatory examiner. That dual role contradicts the precise restrictions in the Bankruptcy Code defining the limited role of an Examiner.

7

the estate is not within the power of an Examiner, who cannot serve as a substitute for a Chapter 11 trustee. *In re Marvel Entertainment Group*, 140 F.3d 463,475 (3d Cir. 1998).

17. PAIF also suggests that Katz may hire other professionals to assist in his dual role as self-appointed investigator and reorganization consultant. As the court noted in *in re W.R. Grace & Co.*, 285 B.R. 148,156, "[t]he Bankruptcy Code does not authorize the retention by an examiner of attorneys or other professionals". The court added that "[t]he basis job of an examiner is to examine, not to be a protagonist in the case…the examiner's role is primarily investigative". *Id.* See also, *In re 1002 Gemini Interests, LLC*, 2015 WL 913542 *5 (February 27, 2015)(Bankr. S.D. Texas)("[a]n examiner's duties are primarily investigative); *In re Gordon Properties, LLC,* 514 B.R. 449,563 (Bankr.E.D.Va. 2013)(examiner has the right to interview anyone he wishes without notice or participation of other parties as part of investigatory role); *In re Prosser*, 2009 WL 2424409 *4 (Bankr. D. Virgin Is. 2009) (examiner's independent role inconsistent with the use of information obtained in investigation to detriment of a party-in-interest and would jeopardize candid relationship between examiner and parties).

18. PAIF, as debtor-in-possession, has the right to retain Katz as a financial and reorganization consultant subject to compensation arrangements approved by the Court. However, Katz cannot serve as a one-person advisory board under the LPA because the LPA does not provide for payment of a person serving in that capacity.

19. Most importantly, the role outlined for Katz in PAIF's Memorandum of Law cannot be approved by the Court, since it authorizes Katz to serve as both an advisor to PAIF and simultaneously act as an Examiner reporting to the Court.

8

20. Ranger will shorty file a Motion asking this Court to order the appointment an actual Examiner under Sections 1104 and 1106 of the Bankruptcy Code. As a professional retained by the Debtor for two months, seeking *nunc pro tunc* retention to the filing date of these cases on March 9, 2018, Katz is disqualified from consideration for that position.

## **CONCLUSION**

Ranger has no objection to PAIF retaining Katz as a financial and reorganization advisor in its Chapter 11 case subject to the objections of the United States Trustee as to the terms of compensation. However, PAIF objects of the retention of Katz beyond that limited role and specifically objects to the terms of retention outlined by PAIF in its ancillary pleading.

Dated: April 27, 2018                                            Respectfully submitted,

                                              BALLARD SPAHR, LLP

                                      By: */s/ Dean C. Waldt*
                                                Dean C. Waldt, Esq.
                                                David A. Haworth, Esq.
                                                210 Lake Drive East, Suite 200
                                                Cherry Hill, New Jersey 08002
                                                Telephone: (856) 761-3400
                                                Facsimile: (856) 761-1020
                                                E-mail: waldtd@ballardspahr.com
                                                E-mail: haworthd@ballardspahr.com

                                                and

                                                David J. Margules*
                                                BALLARD SPAHR LLP
                                                919 North Market Street, 11th Floor
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 252-4432
                                                Facsimile: (302) 252-4466
                                                E-mail: Margulesd@ballardspahr.com
                                                (**Pro Hac Vice*)

                                                and

Timothy D. Katsiff*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-9762
E-mail: katsifft@ballardspahr.com
(*Pro Hac Vice)

Attorneys for Ranger Specialty Income Fund, L.P., Ranger Alternative Management, II, L.P., and Ranger Direct Lending Fund Trust

DMWEST #17688979 V6

## **CERTIFICATE OF SERVICE**

I, Dean C. Waldt, state that on April 27, 2018, I cause a true and correct copy of the foregoing LIMITED OBJECTION TO APPLICATION FOR RETENTION OF PROFESSIONAL BERNARD A. KATZ to be electronically filed through the Court's CM/ECF system. Notice of this filing will be sent to all parties on the Court's Electronic Mail Notice List by operation of the Court's CM/ECF system, including Debtors' counsel.

By: */s/ Dean C. Waldt*
Dean C. Waldt, Esquire

DMWEST #17688979 V6