UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan
United States Bankruptcy Judge

609-858-9360

August 29, 2019

Re: Princeton Alternative Income Fund, LP
Bankr. Case No.: 18-14603

Dear Counsel,

This action comes before the Court by way of the motion filed on behalf of Matthew Cantor, the trustee for the Chapter 11 debtors, Princeton Alternative Income Fund, LP ("PAIF") and Princeton Alternative Funding, LLC ("PAF" and together with PAIF the "Debtors") by and through his counsel, Wollmuth Maher & Deutsch LLP, seeking approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, of the May 30, 2019 Settlement Agreement and Mutual Release (the "Settlement Agreement") by and between the Debtors on the one hand, and Monterey Receivables Funding, LLC, Monterey Financial Services, LLC f/k/a Monterey Financial Services, Inc., and Monterey Financial Services, Inc. Profit Sharing Plan and Trust (together, "Monterey" or "Monterey Entities") on the other hand. Objections have been filed by Westminster National Capital Co., LLC ("Westminster") and Microbilt Corporation ("Microbilt"), creditors of PAIF and PAF.

On July 11, 2019, the Court received evidence and heard testimony and argument, and thereafter closed the record. The ruling was deferred to allow parties to pursue settlement discussions, which have not produced a settlement as of yet. The Court understands that the matter before the Court is the subject of ongoing litigation before the Bankruptcy Court in Las Vegas and that the proposed settlement has a "drop dead" date of September 10, 2019 before the bankruptcy court in Las Vegas will once again take up the litigation. As mentioned, at the July 11th hearing,

the Court accepted into evidence the two Declarations of the trustee, Matthew Cantor in support of the motion, as well as the certification of Walter Wojciechowski, CEO of Microbilt, in opposition. Mr. Cantor was also made available for cross examination.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The basis for the relief sought herein is sections 105, 704, and 1106 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532. Venue of the Debtors' chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

By way of limited background, and in summary fashion, on April 18, 2017, Bristlecone, Inc. d/b/a Bristlecone Holdings ("BC Holdings"), BoonFi LLC ("BoonFi"), Bristlecone Lending, LLC ("BC Lending"), Bristlecone SPV I, LLC ("SPV"), I Do Lending, LLC ("I Do"), Medly, LLC ("Medly"), One Road Lending, LLC ("One Road"), and Wags Lending, LLC ("Wags") (collectively, the "Bristlecone Debtors" or "Bristlecone Entities"), filed for reorganization under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Nevada in a jointly administered Case No. BK-N-17-50472-BTB, which thereafter were converted to cases under chapter 7 of the Bankruptcy Code on or about August 31, 2017. The Bristlecone Debtors had been in the business of providing financing for lease transactions between sellers of consumer goods and individuals. The Monterey Entities entered into various receivable purchase agreements to purchase certain leases from the Bristlecone Debtors, which were generated in the ordinary course of the Bristlecone Debtors' business and to service those leases it did not purchase ("Bristlecone Collateral"). The Monterey Entities have asserted liens and security interests in the Bristlecone Collateral that they serviced pursuant to the terms of the underlying Receivable Purchase Agreements. Westminster also originated a credit line to a Bristlecone entity in or about November, 2015. PAIF was the successor by sale and assignment of the loan and security agreements pursuant to which PAIF thereafter loaned funds to the Bristlecone entity in exchange for security interests in certain of its assets. At some point, PAIF assigned the PAIF Loan Documents to FRS, PAIF's wholly owned subsidiary. Therein lies the problem—for the Monterey Entities were already financing the Bristlecone Entities and claiming preexisting security interests in all of the Bristlecone Collateral, and asserting a priority over the security interests created under

the PAIF Loan Documents. Thus, both the Monterey Entities and PAIF/FRS claim amounts due from the Bristlecone Debtors, which exceed the value of the underlying Bristlecone Collateral. As a result, the loser in the any lien priority litigation can expect to receive nothing, despite its multi-million dollar claims. Westminster also asserted a secured claim of $746,457.30 against the Bristlecone Debtors.

During the course of the Nevada bankruptcy proceeding, PAIF, Westminster, and FRS entered into a settlement agreement with the Bristlecone Debtors ("Bristlecone Settlement"), pursuant to which the parties, including Westminster, agreed that the Bristlecone Debtors would transfer to PAIF, as assignee of FRS and Westminster, specified assets free and clear of liens, including all of the assets in which Westminster claimed a security interest. In addition, PAIF, Westminster, and FRS further agreed in settlement to give the Bristlecone Debtors and guarantors a release, as a result of which, PAIF, Westminster, and FRS hold no further claims against the Bristlecone Debtors. However, the Bristlecone Settlement preserved the liens of the Monterey Entities, if any, in the Bristlecone Collateral for determination at a later date. As a result of the dispute and pursuant to the Bristlecone Settlement, funds being collected on account of payments and collections on account of the Bristlecone Collateral are held in a segregated account under the control of the Trustee. As of June 10, 2019, there was cash in the Bristlecone escrow account (Bristlecone Account") of $5,939,514. As of March 28, 2019, the latest date for which information is available, total balances remaining on uncollected Contracts were approximately $5.7 million.

On October 19, 2017, PAIF, FRS, and Westminster, which had previously assigned its interests in any and all of the Bristlecone Collateral to PAIF, filed an adversary proceeding in the Nevada bankruptcy court to resolve the dispute by and between them and the Monterey Entities. At its essence, the pending Nevada litigation is focused on the extent, validity and priority of the competing liens. As outlined by the Trustee's counsel at the July 11th hearing, there are four primary issues in the pending adversary proceeding:

(1) Whether Monterey's liens in fact followed the collateral into PAIF's hands when the consumer paper was transferred from the originating lenders;

(2) Whether Monterey's liens have any defects under the controlling loan documents;

(3) Whether the Uniform Commercial Code ("UCC") financing statements filed by Monterey properly identified the Bristlecone companies and whether names used were materially misleading under the UCC; and

(4) Whether the procedure for Monterey acquiring a lien on any of the collateral was properly followed in the course of its administration as a servicer for the Bristlecone Entities.

On November 7, 2017, the Monterey Entities filed an answer with counterclaims in the Nevada adversary proceeding. On or about October 4, 2018, the Monterey Entities filed proofs of claim against one or both of the Debtors in this case (the "Proofs of Claim") in excess of $7.6 million, secured by consumer leases and collection proceeds. On April 5, 2019, the Trustee, FRS, and the Monterey Entities, participated in a mediation with the Hon. Steven Rhodes (Ret) in which the parties resolved and settled the dispute as provided in the proposed Settlement Agreement, and seek entry of an order approving the Settlement Agreement. Westminster is not a party to the Settlement Agreement, and, as part of this Motion, the Trustee seeks decrees in the Approval Order protecting the Monterey Entities from any further claims by Westminster.

In summary, the proposed settlement provides that within ten (10) days of the Effective Date, the Debtors shall, among other things, cause FRS to pay to the Monterey Entities $3.19 million from the Bristlecone Account, free and clear of all liens and claims of the Debtor PAIF and FRS, with the remaining balance in the Bristlecone Account to be retained by the Trustee for the benefit of PAIF, free and clear of all liens and claims of the Monterey Entities. Fifty percent (50%) of all collections received by PAIF and/or FRS on any of the Bristlecone Collateral not part of the Bristlecone Account from April 1, 2019, onward, shall be shared equally between the Monterey Entities and the Trustee. On the Effective Date, the Monterey Proofs of Claim shall be deemed withdrawn.

The standards to be employed by this Court in considering the merits of these settlements are not in dispute and all parties have cited to the relevant case law. Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a) empower a bankruptcy court to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See, e.g.*, *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015). To minimize litigation and expedite the administration of a bankruptcy estate, settlements are favored in bankruptcy. *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006). In essence, a court will approve a settlement when it is fair and equitable and in the best interests of the estate. *Id.*; *see also In re Roper & Twardowsky, LLC*, 559 B.R. 375, 393 (Bankr. D.N.J. 2016). The Third Circuit has set forth a four-factor analysis to determine whether a court should approve a proposed settlement agreement reached by a trustee with another party. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Those factors are:

a. The probability of success in litigation;

b. The likely difficulties in collection;

c. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

d. The paramount interest of the creditors.

*Id.*

Also, in assessing whether a settlement proposed by a trustee should be approved, courts are “not supposed to have a ‘mini-trial’ on the merits, but should ‘canvass the issue to see whether the settlement falls below the lowest point in the range of reasonableness.’” *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 1999) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). Furthermore, the Third Circuit has also “noted that a court deciding whether to approve a settlement in bankruptcy ‘relies heavily on the trustee,’ and ‘under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.’” *In re Jasmine, Ltd.*, 258 B.R. at 123 (quoting *In re Martin*, 91 F.3d at 395). Indeed,

> [t]he lenient standards concerning approval of settlements and a limited scope of review reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims. The applicable standards encourage courts to approve settlements in bankruptcy proceedings and related actions.

*In re Purofield Down Products Corp*., 150 B.R. 519, 522-23 (S.D.N.Y. 1983). Courts may consider a wide variety of evidence in hearings for approval of a settlement. Summaries by the parties of the strengths and weaknesses of the matter to be compromised and of the relevant evidence can be considered. *In re Energy Cooperative Inc.*, 886 F.2d 921, 924 (7th Cir. 1989).

This Court determines that the Trustee has met the aforementioned *In re Martin* standards in seeking approval of the potential claims. The Trustee met with special counsel from Fox Rothschild, who has been handling the Nevada litigation and received an estimate of approximately $400,000 to proceed to trial—apart from any costs associated with appeals—and that there are significant risks of loss with respect to the estates' claims. The risks of proceeding to summary judgment and possibly trial in the adversary proceeding are substantial and the Trustee submits that If the Trustee were to lose, then more than $3 million in value available for parties in interest will be lost. The loser will no doubt appeal, further delaying the receipt of proceeds and magnifying the risk that a successful outcome will be undone. Instead, the Trustee has produced a substantial recovery at no further risk or cost. Moreover, a majority of the fulcrum class of investors support the proposed settlement.

The Court is further comforted in determining reasonability of the settlement terms by the fact retired Bankruptcy Judge Steven Rhodes mediated the matter and participated extensively in the negotiations to reach the accord. As to the bar against Westminster pursuing claims relative to the Bristlecone collateral and account, the Court views it well within the purview of Sections 105(a) and 362(a) to enter such relief to prevent an entity which holds no lien claims against property of the estate and has not asserted or articulated any possible claims it holds against the Monterey Entities, from impeding the collection of estate assets. Indeed, if the Debtor has not asserted any such claims in the pending litigation, it is inconceivable that Westminster would hold

any such claims. Accordingly, the proposed settlement is approved and the Court will enter the submitted order.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc: Filed on CM/ECF