**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : | Case No: 18-14603 (MBK) |
|  | : |  |
| PRINCETON ALTERNATIVE INCOME FUND, | : | Chapter 11 |
| LP, *et al.*, | : |  |
|  | : | **HEARING DATE: MARCH 13, 2020, 10:00 A.M.** |
| Debtors. | : | **NO HEARING REQUIRED** |
|  | : | **UNLESS OBJECTIONS FILED** |

------------------------------------------------------------------x

## FIFTH AMENDED DISCLOSURE STATEMENT
## FOR FIFTH AMENDED JOINT CHAPTER 11
## PLAN OF REORGANIZATION OF PRINCETON ALTERNATIVE
## INCOME FUND, LP AND PRINCETON ALTERNATIVE FUNDING,
## LLC PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE ACCOMPANYING PLAN OF REORGANIZATION. THE TRUSTEE BELIEVES THAT THE PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF CREDITORS AND HOLDERS OF EQUITY INTERESTS AND THAT THE PLAN OF REORGANIZATION IS FAIR AND EQUITABLE. THE TRUSTEE URGES THAT ALL PERSONS ENTITLED TO VOTE ACCEPT THE PLAN OF REORGANIZATION.**

Dated: February 19, 2020

WOLLMUTH MAHER & DEUTSCH LLP
51 JFK Parkway
First Floor West
Short Hills, New Jersey 07078
- and -
500 Fifth Avenue
New York, New York 10110
Tel: (212) 382-3300
pdefilippo@wmd-law.com
jlawlor@wmd-law.com

*Counsel for Matthew Cantor, Chapter 11 Trustee*

REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, NJ 08540
dbaker@reedsmith.com
*On behalf of MicroBilt Corporation, MicroBilt
Financial Services Corporation, Rosebud
Management, LLC, AFAB International, Ltd, AFAB
International, LLC, Westminster National Capital
Co., LLC, Bristol Investments, Ltd, Bristol
Investments, LLC, HP Funding II LLC, LJP
Consulting, LLC and Philip N. Burgess, Jr.*

SHERMAN, SILVERSTEIN, KOHL, ROSE &
PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
aabramowitz@shermansilverstein.com
BLuckman@shermansilverstein.com

*On behalf of Princeton Alternative Funding
Management, LLC, Alonzo J. Primus, CPA, Jack
Cook and Walter Wojciechowski*

BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
waldtd@balllardspahr.com
KatsiffT@ballardspahr.com

*On behalf of the Ranger Entities*

MCMANIMON, SCOTLAND & BAUMANN,
LLC
75 Livingston Avenue, 2nd Floor
Roseland, NJ 07068
rtrenk@msbnj.com
RRoglieri@msbnj.com

*On behalf of the Ad-Hoc Committee of Minority
Shareholders*

STEVENS & LEE, P.C.
100 Lenox Drive, Suite 200
Lawrenceville, NJ 08648
jhh@stevenslee.com

*On behalf of Covenant Strategic Income Fund*
*Series Interests of the SALI Multi-Series Fund II*
*3(c)(1), LP*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

   A.  Purpose of This Document ............................................................................2

   B.  Confirmation Procedures ..............................................................................3

      1.  Persons Potentially Eligible to Vote on the Plan ....................................3

      2.  Voting Instructions and Deadline for Voting for or Against the Plan ....................5

      3.  Acceptance or Rejection of the Plan ........................................................5

      4.  Cramdown and No Unfair Discrimination ...............................................6

      5.  Time and Place of the Confirmation Hearing ..........................................7

      6.  Deadline for Objecting to the Confirmation of the Plan ..........................7

      7.  Identity of Person to Contact for More Information Regarding the Plan ...............7

   C.  Disclaimer .....................................................................................................7

II.    BACKGROUND .................................................................................................8

   A.  Description and History of the Debtors' Businesses .....................................8

   B.  Principals/Affiliates of Debtors' Business ....................................................9

   C.  Management of the Debtors Before and During the Bankruptcy ................10

   D.  Events Leading to Chapter 11 Filing .........................................................10

   E.  The Chapter 11 Cases .................................................................................12

      1.  Commencement of the Cases, PAFM and the Ranger Arbitration .....................12

      2.  The Appointment of the Trustee ............................................................12

      3.  The Global Settlement and Development of the Chapter 11 Plan.....................13

      4.  Other Notable Events in the Cases .........................................................13

5.    Retention of Professionals ...................................................................17

6.    Relevant Motions ................................................................................18

7.    Other Legal Proceedings ....................................................................21

8.    Avoidance Actions .............................................................................22

9.    Current and Historical Financial Conditions ......................................23

III.    SUMMARY OF THE PLAN OF REORGANIZATION ................................23

A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan ............23

B.  Unclassified Claims ..........................................................................23

1.    Administrative Expenses and Fees .....................................................24

2.    Court Approval of Schedule 2 Persons Compensation ........................25

3.    Priority Tax Claims ...........................................................................25

C.  Classified Claims and Interests .........................................................25

1.    Claims and Interests Against PAIF .....................................................25

a.    PAIF Class 1 – Allowed Priority Claims .................................25

b.    PAIF Class 2 – Allowed General Unsecured Claims ...........................26

c.    PAIF Class 3 – Ranger Claims .................................................26

d.    PAIF Class 4 – Covenant Claims..............................................26

e.    PAIF Class 5 – Intercompany Claims....................................26

f.    PAIF Class 6 – General Partner Interests .................................26

g.    PAIF Class 7 – Limited Partner Interests (exclusive of the Ranger Entities and Covenant) ................................................................27

2.    Claims and Interests Against PAF.......................................................27

a.    PAF Class 1 – Allowed Priority Claims  .................................27

b.    PAF Class 2 – Allowed General Unsecured Claims..............................27

      c.  PAF Class 3 – Ranger Claims.............................................................28

      d.  PAF Class 4 – Equity Interests ........................................................28

   D.  Means for Implementation of the Plan..........................................................28

     1.  Feeder Fund .............................................................................................28

     2.  Post-Confirmation Management ............................................................28

     3.  Disbursing Agent....................................................................................28

     4.  New Common Equity in PAF .................................................................29

   E.  Other Provisions of the Plan .........................................................................29

     1.  Executory Contracts and Unexpired Leases .........................................29

     2.  Changes in Rates Subject to Regulatory Commission Approval ..........29

     3.  Retention of Jurisdiction ........................................................................29

     4.  Effective Date .........................................................................................30

     5.  Modification ............................................................................................30

IV.     CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..........30

   A.  Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims .......32

     1.  Consequences to Creditors Holding Allowed Claims ...........................32

     2.  Consequences of Holders of Equity Interests.......................................33

     3.  Information Reporting and Backup Withholding...................................33

   B.  Certain U.S. Federal Income Tax Consequences to the Debtors.................................33

     1.  Cancellation of Debt Income..................................................................33

V.      RISK FACTORS ........................................................................................................34

VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES .......................................35

   A.  Who May Vote or Object...............................................................................36

1.   Who May Object to Confirmation of the Plan .......................................36

2.   Who May Vote to Accept/Reject the Plan ..........................................36

B.  Liquidation Analysis ...................................................................................37

C.  Feasibility...................................................................................................37

VII.   EFFECT OF CONFIRMATION OF PLAN .....................................................38

A.  Injunction and Discharge ............................................................................38

B.  Exculpation .................................................................................................38

C.  Estimation Of Contingent and Unliquidated Claims ...................................39

# I.

# <u>INTRODUCTION</u>

Princeton Alternative Income Fund, LP ("PAIF") and Princeton Alternative Funding, LLC ("PAF," and together with PAIF, the "Debtors" and each a "Debtor," as applicable), are the debtors in these bankruptcy proceedings (the "Cases") under title 11 of the United States Code, 11 U.S.C. §§101-1532, as amended from time to time (the "Bankruptcy Code" or "Code"). On March 9, 2018, the Debtors commenced the Cases by filing chapter 11 petitions under the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court" or "Court"). By Order dated November 6, 2018, the Court ordered appointment of a trustee for the Debtors under section 1104 of the Bankruptcy Code. On November 15, 2018, Matthew Cantor was appointed as the chapter 11 Trustee (the "Trustee"). Matthew Cantor, as the Trustee, together with MicroBilt and other parties to the Settlement Agreement which forms the basis for the Plan, are the proponents of the Fifth Amended Joint Chapter 11 Plan of Reorganization attached to this Disclosure Statement as Exhibit A (the "Plan"). Capitalized terms used in this Fifth Amended Disclosure Statement (the "Disclosure Statement") and not defined in this Disclosure Statement have the meaning ascribed to those terms in the Plan.[1]

The Plan provides for the reorganization of the Debtors by means of a global settlement among the parties with substantially all of the economic interests in these cases. The terms of that settlement are described in the Plan and in the Settlement Agreement attached to the Plan as Exhibit A.

---

[1] A blackline of the Disclosure Statement against the Fourth Amended Disclosure Statement for Trustee's Fourth Amended Joint Chapter 11 Plan of Reorganization of Princeton Alternative Income Fund, LP and Princeton Alternative Funding, LLC Pursuant to Section 1125 of the Bankruptcy Code, dated January 13, 2020 (Doc. No. 1010) will be filed contemporaneously with the Disclosure Statement.

The Effective Date of the proposed Plan is anticipated to occur on the first business day after the Confirmation Order becomes a final, non-appealable Order, which is generally fourteen (14) days after entry by the Court of the Order confirming the Plan, provided, however, that no timely notice of appeal has been filed before such fourteen-day period has expired, or no stay of the Confirmation Order is issued.  Immediately following the Effective Date, the Bankruptcy Cases will be closed pursuant to final decree.

A.     **Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)     WHO CAN VOTE OR OBJECT;
(2)     THE PROPOSED TREATMENT OF YOUR CLAIM (*i.e.*, what your Claim or Interests will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION UNDER A CHAPTER 7 CASE;
(3)     THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;
(4)     WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;
(5)     THE EFFECT OF CONFIRMATION; AND
(6)     THE FEASIBILITY OF THE PLAN.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Section 1125 of the Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in section 1125(a) of the Bankruptcy Code as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of a debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court has scheduled a hearing to approve this Disclosure Statement and confirm the Plan for March 13, 2020 at 10:00 a.m.

This Disclosure Statement is provided to each Creditor entitled to vote on the Plan, and to each Limited Partner. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.**    **Confirmation Procedures**

    **1.**    **Persons Potentially Eligible to Vote on the Plan**

This Disclosure Statement is accompanied by copies of the following: (a) the Plan, attached as Exhibit A to this Disclosure Statement, to which is attached the global Settlement Agreement (also known as the Plan Support Agreement or "PSA"); (b) schedule of the loans the Debtors made, and the status of those loans as of October 31, 2019, attached as Exhibit B; (c) a copy of Debtors' December 31, 2018 unaudited balance sheet, attached as Exhibit C; (d) a hypothetical liquidation analysis, attached as Exhibit D; (e) a list of scheduled and filed Claims and their treatment under the Plan, attached as Exhibit E; and (f) the PAIF Balance sheet, dated September 30, 2019, attached as Exhibit F.

Under the Bankruptcy Code, only Impaired Classes of Claims or Interests are entitled to vote to accept or reject a plan of reorganization. A Class that is not Impaired under a plan is

3

deemed to have accepted a plan and does not vote.  A Class is Impaired under the Bankruptcy

Code when the legal, equitable, and contractual rights of the Holders of Claims or Interests in

that Class are modified or altered.  For purposes of the Plan, the Holders of the PAIF Allowed

Priority Claims and Allowed General Unsecured Claims, and PAF Allowed Priority Claims and

PAF Allowed General Unsecured Claims are unimpaired, are deemed to have accepted the Plan

and do not vote.  Holders of PAF Equity Interests are not receiving or retaining anything of value

under the Plan and so are deemed to reject it and need not vote.  The balance of Classes are

Impaired and are allowed to vote.

**Certain Creditors have filed Claims which overlap in certain respects against both**
**Debtors.  For example, the Ranger Entities assert claims against both PAIF and PAF**
**arising from the Arbitration.  Members of the group of parties in interest led by MicroBilt**
**Corp. ("MicroBilt," and together with other clients of Reed Smith in these Cases, the**
**"MicroBilt Group"), and other Redeeming Limited Partners[2] have filed Proofs of Claim**
**against both PAIF and PAF.  There appears to be full overlap of the indemnification**
**Claims by MicroBilt Group members, as well as of some of the claims for services rendered**
**by MicroBilt.  Redeeming Limited Partners have also filed Claims against both Debtors.**
**However, Holders of Allowed Claims against the Debtors shall be entitled only to a single**
**satisfaction and shall not receive in the aggregate from both Debtors more than they are**
**owed from PAIF alone, unless they have a separate Allowed Claim against PAF, in addition**
**to their Allowed Claims against PAIF.**

---

[2] Redeeming Limited Partners means the Ranger Entities, Covenant, Shinnecock Income Fund, L.P. ("Shinnecock"), and Sirius Investments SICAV ("Sirius").

4

2.    **Voting Instructions and Deadline for Voting for or Against the Plan**

All votes to accept or reject the Plan must be cast by using the appropriate form of Ballot

approved by the Court.  No votes other than ones using the Ballots will be counted, except to the

extent the Bankruptcy Court orders otherwise.  The Bankruptcy Court has set the date of entry of

the Order approving the Fourth Amended Disclosure Statement, as the Voting Record Date

under the Plan.  The Voting Record Date is the date for the determination of record Holders of

Claims or Interests entitled to receive a copy of this Disclosure Statement and vote, using

appropriate Ballots, to accept or reject the Plan.  **For a vote to count, a Ballot must be properly**

**completed according to the voting instructions on the Ballot, and all Ballots must be**

**actually received by Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, NY**

**10110, Attn:  James Lawlor, Esq., by March 5, 2020, at 5:00 p.m. (New York City time)**

**(the "Voting Deadline"), unless the Bankruptcy Court extends such date.  Any Ballot not**

**indicating an acceptance or rejection will be submitted to the Court for determination as to**

**its treatment.  Email, electronic or facsimile Ballots will not be accepted.**

The Ballot that you received does not constitute a Proof of Claim or Interest.  If you are

uncertain whether your Claim or Interest has been correctly scheduled or Filed, you should check

the Debtors' Schedules, and the Claims and Interest registers, which are available for review via

the Pacer system at www.njb.uscourts.gov, provided you have the appropriate login credentials.

The Clerk of the Bankruptcy Court will not provide this information by telephone.

3.    **Acceptance or Rejection of the Plan**

Under the Bankruptcy Code, a Class of Claims entitled to vote is deemed to have

accepted the Plan if it is accepted by more than one half in number of Claimants in such Class

who hold at least two-thirds in dollar amount of Allowed Claims of such Class that have actually

voted on the Plan.  A Class of Interests entitled to vote is deemed to have accepted the Plan if it

is accepted by Holders of Interests who hold at least two-thirds in amount of the Allowed

Interests of such Class that have actually voted on the Plan.

>   **4.**      <u>**Cramdown and No Unfair Discrimination**</u>

If any Impaired Class of Claims or Interests entitled to vote does not accept the Plan by

the requisite statutory majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy

Code, as applicable, the Trustee reserves the right to undertake to have the Bankruptcy Court

confirm the Plan under section 1129(b) of the Bankruptcy Code, in which case the Plan will

constitute a motion for such relief, or to amend the Plan, or both.

In determining acceptance of the Plan, votes will only be counted if submitted by a

Holder of an Allowed Claim, *i.e.*, a Creditor whose Claim is duly scheduled by the Debtors as

undisputed, non-contingent and liquidated, or who, prior to the hearing on Confirmation of the

Plan, has filed with the Court a Proof of Claim which has not been the subject of objection or

disallowance prior to computation of the votes on the Plan.  All Holders of Allowed Interests as

of the Voting Record Date may vote on the Plan.  Holders of Allowed Interests may vote on the

Plan in their respective Percentage Interest set forth on Schedule 8 of the PSA

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE

NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS

THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL

CREDITORS AND INTEREST HOLDERS IN THIS CASE.

5.      **Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place

on March 13, 2020, at 10:00 a.m., prevailing New York City time, before the Honorable Michael

B. Kaplan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the

District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State

Street, Trenton, New Jersey 08608.

6.      **Deadline for Objecting to the Confirmation of the Plan**

Objections to the Confirmation of the Plan must be in writing, must comply with the

Bankruptcy Rules and the Local Bankruptcy Rules of the Bankruptcy Court, be filed with the

Court and served upon Paul R. DeFilippo, James N. Lawlor, Wollmuth Maher & Deutsch LLP,

500 Fifth Avenue, 12th Floor, New York, New York 10010, by March 3,, 2020.

7.      **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact James N.

Lawlor, Esq., at Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York

10110, counsel for the Trustee, telephone:  (212) 382-3300 or email at jlawlor@wmd-law.com.

C.      **Disclaimer**

The historical financial and other data relied upon in formulating the Plan is based on the

Debtors' books and records and financial statements, subject to the disclaimer that the Trustee

does not endorse or adopt the Debtors' books and records or financial statements.  The

information contained in this Disclosure Statement is also based the Debtors' books and records

and financial statements, subject to the same disclaimer.  Projected financial information

includes forward-looking statements and the Trustee does not warrant or guarantee that

forecasted financial results will be the same as actual financial results.  The Trustee believes that

assumptions he has made in presenting forecasted results are reasonable.  The Trustee and his

advisors have reviewed the information and have provided what was reasonably available in

order to assist Holders of Claims and Interests evaluate the Plan, but the Trustee and his advisors

make no representations or warranties as to accuracy and completeness.  The Trustee as Plan

Proponent represents that everything stated in the Disclosure Statement (other than the Debtors'

historical financial information) is true to the best of the Plan Proponent's knowledge,

information, and belief.  ALL PROJECTED RECOVERY AMOUNTS ARE ESTIMATES

ONLY BASED ON ASSUMPTIONS THAT ARE FOR ILLUSTRATIVE PURPOSES ONLY.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY
THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS,
FEASIBILITY, OR DESIRABILITY OF THE PLAN.**

## II.

## BACKGROUND

### A.      Description and History of the Debtors' Businesses

PAIF is a Delaware limited partnership with its principal place of business in New Jersey.

Prior to the Petition Date, PAIF's General Partner was PAF, a Delaware limited liability

company with its principal place of business in New Jersey.  PAIF described itself as a debt fund

which provides capital to consumer finance companies that operate in the alternative lending

marketplace.  It was structured as a passive investment vehicle with all investment and

operational authority vested in PAF as the sole General Partner of PAIF.  The Debtors have been

in this business since approximately 2015.  PAIF operated as a "master-feeder" structure,

whereby certain offshore investors invested in the Feeder Fund, which in turn invested in PAIF.

For purposes of administrative convenience only, and without officially changing an

Investor's status as an investor in the Feeder Fund, the Plan Proponents will allow those

Investors in the Feeder Fund to vote directly for purposes of Limited Partners' voting on the

Plan, and treatment under the Plan.  Any Investor who previously invested through the Feeder

Fund shall continue to retain its investment though the Feeder Fund, unless an Investor

specifically elects to have its investment directly in PAIF.  An Investor shall be deemed to hold a

Limited Partner Interest in PAIF with the amount of such Person's Interest calculated as if such

Person's investment in the Feeder Fund was made directly by such investor into PAIF.  Feeder

Fund Investors shall receive ballots allowing them to vote on the Plan as members of PAIF Class

7.  The Trustee intends to cause the Feeder Fund to vote to accept the Plan on behalf of the

Limited Partner Interests it holds in PAIF that relate to those Feeder Fund Investors who do not

vote directly.

## B.    Principals/Affiliates of Debtors' Business

**Debtor PAIF:**  Princeton Alternative Funding, LLC, General Partner.  The identities of

Limited Partners can be found by consulting the filed Proofs of Interest in this Case.

**Debtor PAF:**  (i) Bert Szostak, Member (15.04%), (ii) Gold Drives US LLC Member

(26.32%), (iii) LJP Consulting LLC, Member (6.00%), and (iv) Princeton Alternative Fund

Management, LLC ("PAFM"), Member (52.64%).

**Affiliates:**  (i) Non-debtor PAFM is a Delaware Limited Liability Company with two

members, John Cook (7%) and MicroBilt Financial Services Corp. (93%), and (ii) non-debtor

Princeton Alternative Income Offshore Fund, Ltd. (the Feeder Fund) is a BVI company for

which PAF acts as an investment manager.  The Court made a finding on November 6, 2018 that

MicroBilt Financial Services Corp. is a subsidiary of MicroBilt.

9

**C.**     **Management of the Debtors Before and During the Bankruptcy**

Prior to Bankruptcy, PAF was the General Partner of PAIF and was responsible for

managing PAIF.  The Debtors identified John Cook as CEO and COO of PAIF, and Walter

Wojciechowski as CFO.  PAF was removed from its position as General Partner of PAIF shortly

after the filing of PAF's chapter 11 petition.  Princeton Alternative Funding Management, LLC

("PAFM"), a non-debtor, was installed as PAIF's General Partner.  The Trustee has been

informed that officers or employees of MicroBilt served as the officers of PAFM, and that

MicroBilt directly or indirectly owned a majority of the voting equity in PAFM.  The Trustee

filed a motion to restore PAF as General Partner which was granted on consent on February 13,

2019 (Doc. No. 553).  MicroBilt, which indirectly owns a majority Interest in PAF through

various subsidiaries, purported to provide services to the Debtors, including certain collection

activities.  MicroBilt also assigned Philip Burgess as a consultant to the Debtors, which

consultancy was terminated by the Trustee in February 2019.

**D.**     **Events Leading to Chapter 11 Filing**

PAIF began investing in consumer finance companies in approximately January 2015.  At

their height, the Debtors had extended approximately $75 million to customers pursuant to

revolving credit lines.  A schedule of the loans the Debtors made, and the status of those loans as

of September 30, 2019, is attached as Exhibit B.  When the Trustee was appointed, only four of

the loans that the Debtors made were active and operating.  Two of the borrowers, Bristlecone

and Argon, who owed PAIF about $48 million, had sought bankruptcy protection.  The other

defaulted borrowers owed a total of approximately $19 million when they defaulted.  As of May

27, 2019, the four active lines had total principal balances of approximately $21 million.

In addition to the borrower defaults, in March 2016, the Debtors received a redemption

request from its largest investor the Ranger Entities, which the Debtors disputed.  By March

2016, the Ranger Entities had invested a total of approximately $62 million in PAIF and the

Feeder Fund.  This represented over 99% of the Debtors' assets under management at that time.

In March 2016, the Ranger Entities issued a request to redeem its direct and indirect Interests in

PAIF.  That redemption obligation became due and owing in November 2016, after the Ranger

Entities granted the Debtors an extra thirty (30) days to perform which the Debtors disputed.

When its redemption obligation was not paid and restructuring efforts were unsuccessful, the

Ranger Entities commenced the Arbitration against PAIF and PAF, along with certain of their

Affiliates in or around June 2017.

Also significant was the commencement by the Securities and Exchange Commission

("SEC") of an investigation of the Debtors and their management prior to the Cases.  The

Debtors engaged counsel to respond to SEC subpoenas and incurred substantial costs (which

were covered by insurance).  To date, the SEC has not asserted any monetary claims or identified

any wrongdoing.  Management of the Debtors also commenced other litigations, which were

expensive to prosecute and was not resolved prior to the Effective Date.  Certain of the foregoing

matters contributed to the Debtors seeking relief under chapter 11.

During his tenure, the Trustee examined the facts underlying the creation of what has

been described as the "Argon Side Pocket."  According to footnote 4 to the December 31, 2017

financial statements of PAIF, in December 2016, PAIF's largest portfolio investment, known as

Argon, filed bankruptcy, and at that time PAIF assigned all of its rights against Argon to Fund

Recovery Services, LLC, ("FRS") a wholly owned subsidiary of PAIF, allegedly pursuant to the

11

LPA.[3]  The Argon Side Pocket was established by the Debtors to hold all of the Debtors'

interests in the Argon investment.  The creation of the Argon Side Pocket was effective as of

March 2016, when the Debtors first learned of the fraud committed by Argon, at the direction of

the Debtors' accountants.

**E.**    **The Chapter 11 Cases**

      **1.**    <u>**Commencement of the Cases, PAFM, and the Ranger Arbitration**</u>

On March 9, 2018, the Debtors commenced the Cases.  At that time, the insiders of the

Debtors caused PAF to be replaced with PAFM, and PAFM served as General Partner until

removed *nunc pro tunc* to the Petition Date by an Order of the Court entered on February 13,

2019.

On May 1, 2018, the Bankruptcy Court modified the automatic stay to permit the Ranger

Entities to proceed with Phase 1 of the Arbitration.  At the end of Phase 1 of the Arbitration and

on July 20, 2018, the arbitral panel issued an award to the Ranger Entities for damages, which

the Debtors disputed.  Importantly, the Award made clear that neither party was a prevailing

party in the Arbitration.

      **2.**    <u>**The Appointment of the Trustee**</u>

The Ranger Entities filed a motion seeking the appointment of a chapter 11 Trustee in the

Cases on March 26, 2018.  As of the appointment of the Trustee, the Debtors had not yet

proposed a chapter 11 plan.  On or around November 7, 2018, the Court ordered the appointment

of the Trustee after reviewing the entire Case record, including the submissions of the parties

throughout the Case, the Arbitration, and the uncontested facts before the Court.  The Court

---

[3] PAIF's assignment of the Argon investment to FRS is generally referred to as the "Argon Side Pocket."

made it clear that its ruling was not based on any wrongdoing, and that the appointment of the

Trustee would preserve the integrity of the bankruptcy process and was in the best interest of

Creditors and Investors.

After the Trustee was appointed, the Debtors and MicroBilt appealed the decision to the

District Court and also moved to stay the Case in the Bankruptcy Court.  The motion to stay was

denied, and the District Court affirmed the appointment of the Trustee.  MicroBilt has appealed

the District Court's affirmance to the United States Court of Appeals for the Third Circuit.  That

appeal is pending.

      **3.**       **The Global Settlement and Development of the Chapter 11 Plan**

After almost two years of litigation and disputes during the Bankruptcy Cases, the

Trustee, the MicroBilt Group, the Ad Hoc Committee, the Ranger Entities, and Covenant

reached agreement on a settlement resolving all of the issues in the Cases and leading to the

Debtors' emergence from bankruptcy by way of the Plan.  The terms of that settlement are

memorialized in the PSA, which is attached to the Plan as Exhibit A and incorporated therein.

The Settlement Agreement represents a compromise of all disputed issues in these cases among

the parties with substantially all of economic interests in the Cases.

      **4.**       **Other Notable Events in the Cases**

In addition, the following events and dockets entries reflect the other activity that

occurred during the Cases:

(a)      March 16, 2018:  Interim Order Authorizing (A) Continued Use of Cash

Management System; (B) Maintenance of Existing Bank Accounts; and (C) Continued Use of

Existing Business Forms (Doc. No. 19).  This Order was entered in response to Debtors' First

Day Motion to continue to use their existing Cash management system, which was described as a

well-established mechanism for the collection, management and disbursement of funds used in the Debtors' business;

(b)     May 1, 2018:  Order Denying Ranger Entities' Motion to Dismiss the Debtor's Chapter 11 Case or for Abstention, Deferring Ranger Entities' Motion for Appointment of Chapter 11 Trustee and Scheduling Further Hearings (Doc. No. 121).  This Order was entered in response to Ranger Specialty Income Fund, LP, Ranger Alternative Management II, LP, and Ranger Direct Lending Fund Trust's Motion to Dismiss the Cases on the basis that they were filed without authority and in bad faith;

(c)     May 1, 2018: Order on Ranger's Motion for Relief from the Automatic Stay of 11 U.S.C. § 362 to Permit the Completion of Phase 1 of the Pending Arbitration Proceedings Against the Debtors (Doc. No. 122).  This Order allowed the Arbitration to proceed with respect to Counts 1 through 8 of the Arbitration and allowed the panel to issue a ruling and determination of damages on those counts, effectively barring equitable relief and precluding relief from other counts in the Arbitration;

(d)     May 1, 2018:  Order on Ranger's Motion for an Order Confirming the Automatic Stay of 11 U.S.C. § 362 Does Not Apply to the Non-Debtor Feeder Fund in Phase 1 of the Pending Arbitration (Doc. No. 123).  This Order determined that the Arbitration proceedings against non-debtor related entities were subject to the automatic stay and were allowed to proceed under the same terms of the Court's Order concerning the Arbitration proceeding against the Debtors;

(e)     July 6, 2018:  Final Order Authorizing (A) Continued Use of Cash Management System; (B) Maintenance of Existing Bank Accounts; and (C) Continued Use of Existing Business Forms (Doc. No. 249).  This Order was entered in response to Debtors' First Day

14

Motion to continue to use their existing Cash management system, which was described as a well-established mechanism for the collection, management and disbursement of funds used in the Debtors' business;

(f)     July 17, 2018:  Consent Order Amending the May 1, 2018 Order Regarding Ranger's Motion for Relief from the Automatic Stay of 11 U.S.C. § 362 to Permit the Completion of Phase 1 of the Pending Arbitration Proceedings Against the Debtors (Doc. No. 255).  This Order modified the Court's May 1, 2018 Order concerning the pending JAMS Arbitration, staying the Order until further Order of the Court and making it subject to the Court's sealing power;

(g)     November 7, 2018:  Order Directing Appointment of Chapter 11 Trustee (Doc. No. 389);

(h)     December 4, 2018:  Order denying request to stay appointment of the Trustee (Doc. No. 457);

(i)     As of April 22, 2019, the Trustee entered into a Loan Management, Collection and Reporting Services Agreement on behalf of the Debtors with Sheridan Administrative Services I, LLC ("Sheridan"),[4] to provide as many of the services previously provided by MicroBilt as possible.  This Agreement will be terminated on the Effective Date pursuant to the PSA;

---

[4] Sheridan, which was represented by counsel in the negotiation of its agreement, did not condition entry into the Services Agreement on Court approval, and the Trustee believes that retention of Sheridan was an ordinary course of business event which did not require Court approval.  That is so because PAIF required servicing of its assets in the ordinary course, and to the extent MicroBilt had been performing such services, it did not treat itself as a professional, such as by filing fee applications or seeking court approval of its retention.  The Trustee discerned no legitimate distinction between the services MicroBilt had been performing and those Sheridan has been performing.

(j)       On July 12, 2019, the Court entered an order approving the Trustee's proposed

settlement with TKC (Doc. No. 720).  MicroBilt has appealed this Order and the case is still

pending in the District Court of New Jersey, Case No. 19-15986.  The settlement approved by

that Order has been consummated.  The Plan Proponents believes that confirmation will moot the

need to resolve this appeal;

(k)       On August 29, 2019, the Court entered an Order approving the Trustee's proposed

settlement with Monterey concerning the Bristlecone collateral (Doc. No. 782).  MicroBilt has

appealed this Order and the case is still pending in the District Court of New Jersey, Case No.

19-17914.  The settlement approved with the Monterey Entities has been substantially

consummated.  The Plan Proponents believes that confirmation will moot the need to resolve this

appeal.

(l)       On October 24, 2019, the Court entered the Capital Accounts Order (Doc. No.

872), holding that the Trustee has the authority to determine Limited Partners' Capital Accounts

for all purposes, subject to compliance with the LPA;  The Plan Proponents believes that

confirmation will moot the need to address this Order.

(m)       On October 24, 2019, the Court entered an Order (Doc. No. 873) partially

granting the Trustee's Motion to disallow claims of members of the MicroBilt Group.  The effect

of such Order was, among other things, to expunge MicroBilt's $4 million claim against PAIF

and the indemnification claims of many members of the MicroBilt Group.  The order expunging

MicroBilt's $4 million claim against PAIF is subject to a motion for reconsideration; and

(n)       On November 20, 2019, the Trustee filed the Motion to Approve the Settlement

with the SunUp Entities (Doc. No. 893), which was approved by the Court on February 3, 2020

(Doc. No. 1079), and, if consummated, would resolve the disputes with the SunUp Entities over

16

repayment of the line of credit issued to the SunUp Entities.  MicroBilt and the Ad Hoc

Committee have appealed this Order.  The Plan Proponents believes that confirmation will moot

the need to resolve this appeal.

5.    **Retention of Professionals**

The Court has approved the employment of the following professionals:

- Sills Cummis & Gross, P.C. was appointed by the Court as counsel for the Debtors on
May 3, 2018.  Sills Cummis withdrew as counsel for the Debtors on November 12, 2018.

- Pepper Hamilton LLP was appointed by the Court as special litigation counsel to the
Debtors on May 10, 2018.

- Bernard Katz was appointed by the Court as a member of PAIF's advisory committee on
May 15, 2018.  He was authorized solely to provide finance and restructuring advice to
management in his capacity as an advisory committee member, and not in any other
capacity, and is not authorized to act as a representative of the Debtors.  Mr. Katz'
engagement terminated on the Trustee's appointment.

- On June 15, 2018, the Court authorized (but did not require) the Debtors to retain the
following ordinary course professionals utilized in the Debtors' ordinary course of
business:

| Company | Contact | Services |
|---------|---------|----------|
| Friedman LLP | Marc Eidelberg, CPA | Audit services |
| Kercsmar & Feltus PLLC | Geoffrey S. Kercsmar, Esq. | Legal services (AZ local counsel) |
| King & Spalding | M. Alexander Koch, Esq. | Legal services (regulatory) |
| Krovatin Klingeman | Gerald Krovatin, Esq. | Legal services (litigation) |
| Law Offices of Amy N. Tirre, A PC | Amy N. Tirre, Esq. | Legal services (NV local counsel) |
| Shaw Fishman | Peter J. Roberts, Esq. | Legal services (IL local counsel) |

- Wollmuth Maher & Deutsch LLP was appointed on December 19, 2018 as attorneys for the Trustee in the Cases.  The firm is authorized to perform the necessary legal service required by the Trustee.

- TRS Advisors LLC was retained as financial advisor and investment banker to the Trustee.

- Ogier was retained as special counsel for the Trustee for matters related to British Virgin Islands law.

- McGlinchey Stafford PLLC was appointed by the court as special counsel for the Debtors *nunc pro tunc* to December 7, 2018.  The firm is authorized to perform the necessary legal service required by the Trustee.

- Citrin Cooperman & Company, LLP was retained as accountant to the Trustee on July 12, 2019.

**6.    Relevant Motions**

Currently, the following significant motions, objections to claims and adversary proceedings are still pending:

18

Motions:

- *The Ranger Entities' Motion for Relief from Stay to Pursue Claims against the Feeder Fund* (Doc. No. 334):  This is a motion by the Ranger Entities seeking relief from stay to pursue claims from the Arbitration against the Feeder Fund in the event Ranger Claims are disallowed against PAIF.  An objection to this motion was filed by Debtors (Doc. No. 349) and the Ranger Entities subsequently filed a response to the objection (Doc. No. 358).  If the motion to disallow these claims (Doc. No. 273) is successful, the Ranger Entities will instead seek to obtain these funds from the Feeder Fund.  A consent Order regarding this matter was filed on January 28, 2019 (Doc. No. 535) but was vacated on January 29, 2019 (Doc. No. 539).  Negotiation on this issue is currently ongoing.  The Plan Proponents believes that confirmation will moot the need to resolve this motion.

- *Ad Hoc Committee's Motion for Derivative Standing to sue Ranger and Covenant* (Doc. No. 796):  This motion was denied without prejudice.

- *Ad Hoc Committee's Motion to compel Arbitration of Disputes related to Capital Accounts* (Doc. No. 826):  In this Motion, the Ad Hoc Committee sought to arbitrate the determination of capital accounts by the Trustee.  This motion was denied.  The Ad Hoc Committee has appealed this Order.

- *Ad Hoc Committee's Motion to designate Ranger and Covenant Votes* (Doc. No. 829):  This motion is pending with a hearing date scheduled for March 13, 2020.  The Plan Proponents believes that confirmation will moot the need to resolve this motion.

Adversary Proceedings:

- *MicroBilt Corporation et al. v. Anderson and Dinsmore & Stohl LLP* (Adv. Proc. No. 18-01224-MBK):  This is a removed state court action alleging breaches of fiduciary duty and duty of loyalty against Timothy Anderson of Pepper Hamilton.  The complaint in this litigation alleges an unstated amount of compensatory and punitive damages from breach of fiduciary duty and duty of loyalty claim arising out of transactions totaling $17 million.  The Trustee expresses no view as to the merits of the claims asserted or the recoverability of any judgment in this matter, as it was commenced prior to the Trustee's appointment.

- *Fund Recovery Services v. Shoreside SPV et al.* (Adv. Proc. No. 18-01598-MBK):  This action was removed from District Court of New Jersey after removal from California.  In this action, Fund Recovery Service is asserting rights of PAIF suing for breach of guaranty.  FRS SS obtained a judgment against Shoreside, which is believed to be uncollectable, and has recently reached a settlement with the principals of Shoreside to pay $30,000 on account of the claims against them.

- *Matthew Cantor as Trustee v. MicroBilt Corp.* (Adv. Proc. No. 19-1157-MBK):  This is an action to restrain MicroBilt's termination of the services agreement between PAF and MicroBilt, and for other relief.  The Court entered a preliminary injunction on the Trustee's application by Order dated May 23, 2019 (Adv. Proc. No. 19-01157, Doc. No. 22).  The Plan Proponents believes that confirmation will moot the need to resolve this adversary proceeding.

20

- *Matthew Cantor as Trustee v. Burgess, et al.* (Adv. Proc. No. 19-2071-MBK):  This is an action for civil violations of New Jersey's Racketeer Influenced and Corrupt Organization Act, fraudulent conveyances, common law breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, causing the Debtors to breach their fiduciary duties to investors, as well as for breaches of contract and declaratory judgments that certain contractual and indemnification provisions purporting to bind the Debtors are unenforceable and void.  The Plan Proponents believes that confirmation will moot the need to resolve this adversary proceeding.

7.      **Other Legal Proceedings**

In addition to the proceedings discussed above, the Debtors are currently involved in the following non-bankruptcy legal proceedings:

- *Argon Bankruptcy Proceedings* (Case No. 16-39654 N.D. Ill.):  Argon filed Chapter 11 in the Northern District of Illinois, which case was shortly after its filing converted to a Chapter 7 case.  The Argon trustee has asserted preference claims against the Argon Side Pocket based upon payments made by Argon prior to its bankruptcy.  The face amount of such claims is approximately $400,000.  Negotiations are ongoing with respect to resolution of such claims.

- *MicroBilt Corporation v. Princeton Alternative Income Fund, et al.* (Case No. 18-16557 D.N.J.):  This is an appeal to the District Court of New Jersey of the Order appointing the chapter 11 Trustee in this bankruptcy proceeding.  The appeal was resolved on November 27, 2019 by affirmance of the bankruptcy Court's decision to order a trustee appointed.  MicroBilt has appealed affirmance to the Court of Appeals.  The Plan Proponents believes that confirmation will moot the need to resolve this appeal.

21

- *MicroBilt Corporation v. Matthew Cantor* (Case No. 19-15986 D.N.J.):  This is an appeal to the District Court of New Jersey of the Order approving the settlement pursuant to Bankruptcy Rule 9019 with TKC Worldwide, LLC.  The Plan Proponents believes that confirmation will moot the need to resolve this appeal.

- *MicroBilt Corporation v. Matthew Cantor* (Case No. 19-17914 D.N.J.):  This is an appeal to the District Court of New Jersey of the Order approving settlement with Monterey regarding the Bristlecone collateral dispute.  The Plan Proponents believes that confirmation will moot the need to resolve this appeal.

- *MicroBilt Corp. et al v Matthew Cantor* (Case No. 20-01037):  Adversary Proceeding filed in the Bankruptcy Court against the Trustee seeking monetary damages.  The Plan Proponents believes that confirmation will moot the need to resolve this adversary proceeding.

## 8.      Avoidance Actions

The Bankruptcy Code provides the Debtors with potential Claims and Causes of Action against Creditors and/or other parties arising from their relationship with the Debtors pursuant to, among other applicable sections, sections 542, 543, 544, 546, 547, and/or 549.  In addition, the Debtors may have potential Claims and Causes of Action against Creditors and/or third-parties arising under applicable non-bankruptcy law.  Upon the Effective Date, all of these Avoidance Actions and Causes of Action shall revest in the Debtors, except to the extent previously released or released under the Settlement Agreement.

9.      **Current and Historical Financial Conditions**

A copy of Debtors' December 31, 2018 balance sheet is annexed hereto as Exhibit C.

The Trustee makes no representations or warranties as to the accuracy of this balance sheet and it

has not been relied upon as the basis for the liquidation analysis annexed hereto as Exhibit D.

A total of approximately $8 million in General Unsecured Claims have been filed against

PAIF, and a total of approximately $9 million in General Unsecured Claims have been filed

against PAF, exclusive of the Ranger Claims and the Covenant Claims.  All Claims scheduled

and asserted against the Debtors (other than Schedule 2 Parties) and their respective treatment

under the Plan are described on Exhibit E.

Attached as Exhibit F is a schedule of material assets of PAIF (other than litigation

claims) as of September 30, 2019.

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

A.      **What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies Claims and Interests in various Classes.  The Plan states whether each

Class of Claims or Interests is Impaired or unimpaired.  The Plan provides the treatment each

Class will receive.

B.      **Unclassified Claims**

Certain types of Claims are not placed into voting Classes.  They are not considered

Impaired, and they do not vote on the Plan because they are automatically entitled to specific

treatment provided for them in the Bankruptcy Code.  As such, the Plan Proponent has not

placed the following Claims in a Class:

23

1.      <u>**Administrative Expenses and Fees**</u>

Administrative Expense Claims are Claims for fees, costs or expenses of administering

the Cases which are allowed under section 507(a)(1) of the Code, including all professional

compensation requests pursuant to sections 330 and 331 of the Code.  The Code requires that

all administrative expenses including fees payable to the Bankruptcy Court and the Office of

the United States Trustee which were incurred during the pendency of the Cases must be paid

on the Effective Date of the Plan, unless a particular Claimant agrees to a different treatment.

Allowed and unpaid Administrative Expense Claims (other than Trustee fees, Trustee

Professional Fee Claims, and United States Trustee Fees due for the first calendar quarter of

2020) shall be the responsibility of the Reorganized Debtors, and will be paid, to the extent due

and payable, by the Reorganized Debtors after the Effective Date.  The Reorganized Debtors

shall retain all defenses to the payment of any unpaid Administrative Expense Claims that they

held prior to the Effective Date.  No Substantial Contribution Claims shall be payable to any

party to the PSA or to any professional employed by any party to the PSA.

All unpaid claims for fees and expenses of any Person listed on Schedule 2 to the PSA

shall be paid in full from the Escrow Amount.  The United States Trustee Fees for the first

calendar quarter of 2020 shall be paid form the Escrow Amount, up to a maximum of $50,000.

The Reorganized Debtors shall be released and discharged from all Claims held by any

Schedule 2 Persons when the Escrow Amount has been paid to the Escrow Agent.

Each Ordinary Course Professional who has not been paid in full as of the Effective

Date shall retain its rights to payment against the Debtors, in all cases limited by the

restrictions set forth in the Ordinary Course Professional Order.  No Ordinary Course

Professional shall be entitled to payment by the Reorganized Debtors of any amount in excess

24

of the limitations on allowable fees payable to such professional in the Ordinary Course

Professional Order.

### 2.  Court Approval of Schedule 2 Persons Compensation

Pursuant to the PSA, the Bankruptcy Court is being asked to approve payments from

the Escrow Amount to the Schedule 2 Persons without the need for filing fee applications.  The

Trustee has explained the rationale for this in the Motion to Approve the Settlement and

Confirm the Plan, filed February 19, 2020.

### 3.  Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment, and other taxes

described by section 507(a)(8) of the Code.  The Code requires that each holder of such a

section 507(a)(8) Priority Tax Claim receives the present value of such claim in deferred Cash

payments, over a period not exceeding six (6) years from the date of the assessment of such tax.

Priority Tax Claims are to be paid in full in Cash promptly after the Effective Date.

The Plan Proponents are only aware of the following Priority Tax Claims filed against

the Debtors: (i) Claim 2-1 filed by Internal Revenue Service against PAIF ($3,000); (ii) Claim

1-1 filed by Internal Revenue Service against PAF ($250); and, (iii) Claim 25-1 filed by State of

New Jersey Department of Taxation against PAF ($625).

## C.  Classified Claims and Interests

### 1.  Claims and Interests Against PAIF

#### a.  PAIF Class 1 – Allowed Priority Claims

Certain Priority Claims that are referred to in sections 507(a)(3), (4), (5), (6), (7) and (9)

of the Code are required to be placed in a priority Class.  Holders of Allowed Priority Claims

shall be paid the full Allowed amount of such Priority Claim in Cash as soon as practicable after the Effective Date.  No Plan Proponent is aware of any Priority Claim subject to this Class.

### b.  PAIF Class 2 – Allowed General Unsecured Claims

Allowed General Unsecured Claims are Claims that are not an Administrative Expense Claim, Priority Claim, Priority Tax Claim, Ranger Claim, Covenant Claim, or Intercompany Claim.  The members of this Class who are parties to the PSA are receiving the treatment set forth in the PSA.  Members of this Class who are not parties to the PSA will retain their legal, equitable, and contractual rights against PAIF without alteration, subject to any defenses to enforcement held by PAIF.  This Class is not Impaired.  This Class is not Impaired Holders of PAIF Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

### c.  PAIF Class 3 – Ranger Claims

The Ranger Claims are Claims filed by the Ranger Entities.  The Ranger Entities have filed unsecured Claims against both PAIF and PAF.  The Ranger Claims will be paid from the Escrow Amount pursuant to the PSA.  This Class is impaired.

### d.  PAIF Class 4 – Covenant Claims

The Covenant Claims will be paid in accordance with the PSA.  This Class is impaired.

### e.  PAIF Class 5 – Intercompany Claims

The legal, equitable, and contractual rights of Intercompany Claims of PAF and the Feeder Fund against PAIF shall remain unaltered.  This Class is not Impaired.

### f.  PAIF Class 6 – General Partner Interests

The legal, equitable, and contractual rights of the Holder of General Partner Interests in PAIF shall remain unaltered.  This Class is not Impaired.

26

### g. **PAIF Class 7 – Limited Partner Interests (exclusive of the Ranger Entities and Covenant)**

Members of this Class shall retain their Interests in PAIF (or the Feeder Fund, as the case may be), and shall be treated in accordance with the PSA.  This Class is impaired.

### 2. **Claims and Interests Against PAF**

### a. **PAF Class 1 – Allowed Priority Claims**

Allowed Priority Claims shall be paid the full Allowed amount of such Priority Claim in Cash as soon after the Effective Date as practicable.  This Class is not Impaired.  No Plan Proponent is aware of any Priority Claim subject to this Class.

### b. **PAF Class 2 – Allowed General Unsecured Claims**

Allowed General Unsecured Claims are Claims that are not an Administrative Expense Claim, Priority Claim, Priority Tax Claim, Ranger Claims, or Intercompany Claim.  Unsecured Proofs of Claims of approximately $9 million have been filed in the Cases, exclusive of the Ranger Claims and the Covenant Claims, but inclusive of claims filed by certain other Limited Partners.  The members of this Class who are parties to the PSA are receiving the treatment set forth in the PSA.  Members of this Class who are not parties to the PSA will retain their legal, equitable, and contractual rights against PAF without alteration, subject to any defenses to enforcement held by PAF.  This Class is unimpaired.  This Class is not Impaired Holders of PAF Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

27

      **c.**   **PAF Class 3 – Ranger Claims**

Claims of the Ranger Entities against PAF shall be treated in accordance with the PSA.
This Class is impaired.

      **d.**   **PAF Class 4 – Equity Interests**

Equity Interests in PAF shall not receive or retain anything of value under the Plan and
are deemed to have rejected.  This Class is impaired.

**D.**     **Means for Implementation of the Plan**

Prior to the Effective Date, the Trustee shall close the SunUp settlement.  If the Court
approves the PSA, then distributions to Creditors and Investors will occur after the Effective
Date and closure of the Cases in accordance with the PSA.  The first business day after the
closure of the Cases, the Debtors shall deposit the Escrow Amount with the Escrow Agent, who
shall make the distributions of the Escrow Amount called for by the PSA, and the other actions
will be taken called for by the Plan.

    **1.**     **Feeder Fund**

The General Partner will resume control over the Feeder Fund after the Effective Date.

    **2.**     **Post-Confirmation Management**

Post-Confirmation, the Ad Hoc Committee of Investors will form an advisory committee
to advise and assist the General Partner in the management of the Debtors.  The LPA will be
amended accordingly.

    **3.**     **Disbursing Agent**

The Reorganized Debtors shall act as the disbursing agent for the purpose of making all
distributions provided for under the Plan.

4. **New Common Equity in PAF**

As of the Effective Date, in consideration of the waivers, releases, and other contributions made to the reorganization of the Debtors under the Plan by the members of the MicroBilt Group, Reorganized PAF shall issue 100% of the new common equity interests in PAF to MicroBilt Financial Services Corp.

E. **Other Provisions of the Plan**

1. **Executory Contracts and Unexpired Leases**

The Plan provides that all Executory Contracts and Unexpired Leases that exist between any Debtor and any Entity as described on Schedule G of the Schedules that have not been assumed or rejected prior to the Effective Date, shall be deemed assumed as of the Effective Date. All Executory Contracts and Unexpired Leases that exist between any Debtor and any Entity as described on Schedule 4 of the PSA that have not been assumed or rejected prior to the Effective Date, shall be deemed rejected as of the Effective Date. The LPA shall be deemed assumed upon entry of the Confirmation Order, and shall be amended in accordance with the PSA after the Effective Date. Any Claims arising from rejection of any contracts set forth on Schedule 4 of the PSA shall be treated as General Unsecured Claims against the Debtor who is a party to such contract (other than the contract with Sheridan which is released).

2. **Changes in Rates Subject to Regulatory Commission Approval**

These Debtors are not subject to governmental regulatory commission approval of their rates.

3. **Retention of Jurisdiction**

The Court will retain jurisdiction as provided in Section 10.2 of the Plan.

29

4.      **Effective Date**

The Plan will become effective on the Effective Date.  The Plan provides that the

Effective Date is the first Business Day upon which (a) no stay of the Confirmation Order is in

effect and (b) the conditions to the Effective Date set forth in the Plan have been satisfied or

waived.

5.      **Modification**

The Plan Proponents jointly may alter, amend or modify the Plan at any time prior to the

Confirmation Order.  After entry of the Confirmation Order, the Plan Proponents jointly may,

upon Order of the Bankruptcy Court, amend or modify the Plan and related documents in

accordance with, and to the extent permitted by, section 1127 of the Bankruptcy Code, and

remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may

be necessary to carry out the purpose and intent of the Plan.

**IV.**

**CERTAIN U.S. FEDERAL INCOME
TAX CONSEQUENCES OF THE PLAN**

The following discussion is a summary of certain U.S. federal income tax consequences

of the consummation of the Plan to Holders of Allowed Claims and Interests and the Debtors.

This summary is based on the Internal Revenue Code (the "IRC"), the U.S. Treasury Regulations

promulgated thereunder, judicial authorities, published administrative positions of the Internal

Revenue Service (the "IRS") and other applicable authorities, all as in effect on the date of this

Disclosure Statement and all of which are subject to change or differing interpretations, possibly

with retroactive effect.  No rulings or determinations of the IRS or any other taxing authorities

have been sought or obtained with respect to the tax consequences discussed herein, and the

discussion below is not binding upon the IRS or the courts.  No assurance can be given that the

IRS would not assert, or that a court would not sustain, a different position than any position

discussed herein.  Events occurring after the date of this Disclosure Statement, including changes

in law and changes in administrative positions, could affect the United States federal income tax

consequences of the Plan.

This discussion does not apply to Holders of Claims that are not "U.S. persons" (as such

phrase is defined in the IRC) and does not purport to address all aspects of U.S. federal income

taxation that may be relevant to the Debtors or to such Holders in light of their individual

circumstances.  This discussion does not address tax issues with respect to Holders subject to

special treatment under the U.S. federal income tax laws (including, for example, banks,

governmental authorities or agencies, pass-through entities, dealers and traders in securities,

insurance companies, financial institutions, tax-exempt organizations, small business investment

companies and regulated investment companies) or to Holders that hold more than one Class of

Claims or Interest.  No aspect of state, local, estate, gift, or non-U.S. taxation is addressed.

**THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME
TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A
SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE
INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED
CLAIM OR INTERESTS.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED
TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE,
LOCAL, AND NON-UNITED STATES TAX CONSEQUENCES OF THE PLAN.**

**IRS CIRCULAR 230 DISCLOSURE:    TO ENSURE COMPLIANCE WITH
REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS**

**DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC.   TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT.   EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

A.      **Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims**

      1.      **Consequences to Creditors Holding Allowed Claims**

Upon the approval of the Plan, each Holder of Allowed Claims shall receive, in full and final satisfaction of its Claims, (i) Cash on the Effective Date, (ii) payment of the Escrow Amount, or (iii) retention of all legal, equitable, and contractual rights of such Holders against the Reorganized Debtors.  A Holder who receives Cash with respect to indebtedness held by it will generally recognize income, gain, or loss for U.S. federal income tax purposes in an amount equal to the difference between (a) the amount of Cash received and (b) the Holder's adjusted basis in such indebtedness.  Such gain or loss may be capital in nature (subject to the "market discount" rules described below) and may be long-term capital gain or loss if the indebtedness has been held for more than one year.  To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

32

2. **Consequences of Holders of Equity Interests**

Upon the approval of the Plan, each Holder of Allowed Limited Partner Interests shall receive, in full and final satisfaction of its Interests, retention of their Interests in PAIF (or the Feeder Fund, as the case may be), and shall be treated in accordance with the PSA.

3. **Information Reporting and Backup Withholding**

In general, information reporting requirements may apply to distributions or payments under the Plan.  Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 24%) with respect to distributions or payments made pursuant to the Plan unless that Holder:  (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided, however, that the required information is provided to the IRS.

The Debtors will withhold all amounts required by law to be withheld from payments of interest.  The Debtors will comply with all applicable reporting requirements of the IRS.

B. **Certain U.S. Federal Income Tax Consequences to the Debtors**

1. **Cancellation of Debt Income**

In general, absent an exception, a debtor will realize and recognize cancellation of indebtedness income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness.  The amount of COD Income, in

33

general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the

sum of (x) the amount of Cash paid, (y) the issue price of debt that is not publicly traded nor

deemed exchanged for publicly traded property, and (z) the fair market value of any new

consideration (including stock) given in satisfaction of such indebtedness at the time of the

exchange.  The Debtors should not recognize any COD Income in connection with the

consummation of the transactions contemplated by the Plan.

**THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN
ARE COMPLEX AND IN MANY CASES UNCERTAIN.  THE FOREGOING SUMMARY
DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME
TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM
IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION.
ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD CONSULT WITH
THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM
OF THE TRANSACTIONS CONTEMPLATED BY THE RESTRUCTURING,
INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR
FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## V.

## RISK FACTORS

The following discussion is intended to be a non-exclusive summary of certain risks

attendant upon the consummation of the Plan.  You are encouraged to supplement this

summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their

entirety, and in consultation with your own advisors.  Based on the analysis of the risks

34

summarized below, the Plan Proponent believes that the Plan is viable and will meet all

requirements of Confirmation.

- The assets other than Cash may not be able to be realized upon for their expected values,

  or may be worth nothing.  The Debtors' investments are illiquid and secured by

  collateral and may be difficult to collect.  Efforts to collect the collateral for defaulted

  loans may be subject to numerous federal and state regulatory restrictions.

- Parties who are aggrieved by the Plan may challenge Confirmation which may delay

  implementation and Creditor and Partner recoveries.

- The IRS may audit the Debtors' prior year tax returns, and may challenge the Debtors'

  compliance with the rules regarding a "master-feeder" fund structure.

## VI.

## <u>CONFIRMATION REQUIREMENTS AND PROCEDURES</u>

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN

SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

discussion is intended solely for the purpose of alerting readers about basic Confirmation

issues, which they may wish to consider, as well as certain deadlines for filing Claims.  The

Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a

complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the

requirements include that the Plan must be proposed in good faith, that Creditors or Interest

Holders have accepted the Plan, that the Plan pays Creditors at least as much as Creditors

would receive in a chapter 7 liquidation, and that the Plan is feasible.  These requirements are

<u>not</u> the only requirements for Confirmation.

## A.    <u>Who May Vote or Object</u>

### 1.      <u>Who May Object to Confirmation of the Plan</u>

Any party in interest may object to the Confirmation of the Plan, but as explained below

not everyone is entitled to vote to accept or reject the Plan.

### 2.      <u>Who May Vote to Accept/Reject the Plan</u>

A Creditor or Interest Holder has a right to vote for or against the Plan if that Creditor or

Interest Holder has a Claim that is both (1) allowed or allowed for voting purposes and (2)

classified in an Impaired Class.

As noted above, a Creditor or Interest Holder must first have an <u>Allowed Claim or</u>

<u>Interest</u> to have the right to vote.  Generally, any Proof of Claim or Interest will be allowed,

unless a party in interest brings a motion objecting to the Claim.  When an objection to a Claim

or Interest is filed, the Creditor or Interest Holder holding the Claim or Interest cannot vote

unless the Court, after notice and hearing, either overrules the objection or allows the Claim or

Interest for voting purposes.

A Creditor or Interest Holder may have an allowed Claim or Interest even if a Proof of

Claim or Interest was not timely filed.  A Claim is deemed Allowed if (1) it is scheduled on the

Debtors' Schedules and such Claim is not scheduled as Disputed, Contingent, or Unliquidated,

and (2) no party in interest has objected to the Claim.  An Interest is deemed Allowed if it is

scheduled and no party in interest has objected to the Interest.

B.      **Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test," which requires a

liquidation analysis.  Under the Best Interest Test, if a Claimant or Interest Holder is in an

Impaired Class and that Claimant or Interest Holder does not vote to accept the Plan, then that

Claimant or Interest Holder must receive or retain under the Plan property of a value not less

than the amount that such Holder would receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the Debtors' assets are usually sold by a chapter 7 trustee.  Secured

creditors are paid first from the sales proceeds of properties on which the secured creditor has a

lien.  Administrative Expense Claims are paid next.  Next, unsecured creditors are paid from any

remaining sale proceeds, according to their rights to priority.  Unsecured creditors with the same

priority share in proportion to the amount of their Allowed Claims.  Finally, Interest Holders

receive the balance that remains after all creditors are paid in full, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all

Creditors and Interest Holders who do not accept the Plan will receive at least as much under the

Plan as such Holders would receive under a chapter 7 liquidation.  The Plan Proponent maintains

that this requirement is met here because of the PSA has the effect of resolving all Claims and

Interests and allows certain Interest Holders to maintain their equity interests in the Reorganized

Debtors.  Absent such settlement, there would be fractional recoveries by Holders of General

Unsecured Claims, and there could be no money available for distribution to Limited or General

Partner Interests.  In addition, the amounts realized form the liquidation of the Debtors' assets in

a chapter 7 case would likely be less than will be realized in this Case, and the costs and

37

expenses of administering the chapter 7 case would further reduce distributions to parties in interest.

**C.**     <u>**Feasibility**</u>

Another requirement for confirmation involves the feasibility of the Plan, which means that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. Since the Debtors will emerge debt free with substantial assets, the Plan is inherently feasible. In addition, the Trustee is confident that the Debtors will have sufficient Cash on the Effective Date to make the payments required under the PSA.

**VII.**

**<u>EFFECT OF CONFIRMATION OF PLAN</u>**

**A.**     <u>**Injunction and Discharge**</u>

The Plan provides that the Debtors will be discharged on the Effective Date, that releases will be exchanged between the Parties to the PSA, and all Holders of Claims and Interests shall be enjoined and permanently restrained from seeking to recover on their Claims against or Interests in the Debtors, other than pursuant to the Plan. The provisions of the Plan shall be binding upon Debtors, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest Holders are Impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.**     <u>**Exculpation**</u>

The Plan provides that the Exculpated Parties shall, generally, have no liability for prosecution or Confirmation of the Plan or actions taken during the administration of the Cases.

38

The exculpation provided herein shall apply to the fullest extent allowable within the confines outlined in *In re PWS*, 228 F.3d 224 (3d Cir. 2000).

**C.**    **Estimation Of Contingent and Unliquidated Claims**

Any Contingent and Unliquidated Claims which have not been fixed as of the date of the Confirmation Hearing will be estimated at zero and will not receive any property under the Plan.

*Princeton Alternative Income Fund, LP*

BY:    */s/ Matthew Cantor*
      Matthew Cantor, Chapter 11 Trustee


*Princeton Alternative Funding, LLC*

BY:    */s/ Matthew Cantor*
      Matthew Cantor, Chapter 11 Trustee


*MicroBilt Corporation, MicroBilt Financial Services
Corporation, Rosebud Management, LLC, AFAB
International, Ltd, AFAB International, LLC, Westminster
National Capital Co., LLC, Bristol Investments, Ltd, Bristol
Investments, LLC, HP Funding II LLC, LJP Consulting,
LLC and Philip N. Burgess, Jr.*

BY:    */s/ Derek J. Baker*
      Derek J. Baker
      A member of the Firm


*Princeton Alternative Funding Management, LLC, Alonzo
J. Primus, CPA, Jack Cook and Walter Wojciechowski*

BY:    */s/ Arthur J. Abramowitz*
      Arthur J. Abramowitz
      A member of the firm


*Ranger Entities*

BY:    */s/ Dean Waldt*
      Dean Waldt
      A member of the firm
*Ad-Hoc Committee of Minority Shareholders*

BY:    */s/ Richard Trenk*
      Richard Trenk
      A member of the firm

*Covenant Strategic Income Fund Series Interests of the
SALI Multi-Series Fund II 3(c)(1), LP*

BY:    */s/ Joseph H. Huston, Jr.*
       Joseph H. Huston, Jr. (DE No. 4035)
       Counsel to the firm

NEW YORK, NEW YORK
February 19, 2020

41